UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**UNITED STATES OF AMERICA**

v.                                                                                  Case No. 3:11-cr-5-J-20JRK

**RYAN AUSTIN YOUNG**

---

### SENTENCING MEMORANDUM

The Defendant, **Ryan Austin Young**, by and through the undersigned attorney, hereby files the following Sentencing Memorandum for the Court's consideration in advance of the sentencing hearing scheduled for Wednesday, April 2, 2014.

*History and Characteristics*

As children, one of the first lessons learned is not to touch a hot stove.  Some children learn by heeding their parents' warnings.  Others learn by seeing the glowing heating element and feeling the warmth from a distance.  Still others learn by seeing a friend or sibling get burned after ignoring the warnings.  But the most painful way to learn this life lesson is burning our own hand and learning the hard way not just that the stove is hot, but that the injury could have been avoided by simply heeding the warnings.

Ryan Austin Young is 26 years old and the youngest of the individuals charged in the instant conspiracy.  Twice in his life – this case being the second – he has learned the painful lesson about getting burned by a hot stove.  The first time he learned this lesson, he literally lost his right hand.

When Ryan Young was six years old, he watched his father putting fireworks in the garage for an upcoming Fourth of July celebration.  As he put them away, his father warned him not to touch them.  Curious about the fireworks and impatient to wait until the holiday, Ryan Young snuck

into the garage, took one of the M-80 fireworks into the back yard, and with a match lit the fuse. At first, he was excited that he had succeeded in lighting the firework, but he quickly realized what would happen next. He panicked and shoved the M-80 into the ground trying to put out the flame. Instead, the firework exploded, destroying his right hand.

For Ryan Young, two things resulted from that accident. The first was that he had learned a painful and life-altering lesson by losing his right hand. The second was that he was not going to let losing his hand stop him from doing anything any other kid would do. Up to that point he had been right-handed, so he relearned how to do everything as a lefty. He continued playing soccer and was inspired to play baseball after watching then California Angels pitcher Jim Abbott, who pitched left-handed and was born with no right hand. As a South Florida kid and teenager, Ryan Young also became an avid fisherman, surfer, scuba diver, and spear fisherman. Because his father was a pilot and involved in business aviation, Ryan Young also grew up learning not just about flying planes but also fixing them.

*Nature and Circumstances of the Offense*

After finishing high school, Ryan Young was a good student and a bright young man with a lot of energy and ambition but little direction. He had been attending college part-time and working part-time, but was not sure what he wanted to do with his life. Then in late 2008, a friend introduced him to Zachary Rose. Mr. Rose offered 21-year-old Ryan Young a job at a clinic he owned in Broward County, where Mr. Young started out working the front desk, was a file clerk, and answered phones. When Mr. Rose decided to open a clinic in Jacksonville in December 2009, he asked Mr. Young along with other staff to work for him in the new clinic. At the new clinic, Jacksonville Pain, Mr. Young worked in the dispensary and was trained to learn the day-to-day

operations in the clinic. As is true of many of the other co-defendants who worked as staff members in this case, Mr. Young did not initially see that the clinics were doing anything wrong. But as time went on and a second clinic opened, he and the other staff could not help but notice the marked increase in patients, the nature of the clientele, and that this was a cash-only business.

In the midst of this, Mr. Young knew his parents were proud of him and his decision to move to a new city and embark on a new job opportunity. However, when they started to doubt the business, he brushed theirs and his own concerns aside because he did not want to fail them. Ignoring his better judgment and that of his parents, he continued to work for Mr. Rose at Jacksonville Pain and First Coast Pain.

### *Procedural History*

On October 14, 2011, Mr. Young was arrested following the issuance of a Superseding Indictment. Docs 29, 110. On October 17, 2011, he was released on a bond and pretrial release conditions. Docs 123, 124. On October 12, 2012, he entered a plea of guilty pursuant to a written plea agreement in which he fully accepted responsibility for his conduct in this case. Doc 423. While on bond, he lived with his mother in South Florida and worked. He also battled alcohol and substance abuse addictions that he unsuccessfully tried to keep from his parents and from the Court. Following bond violations for testing positive for cocaine, Mr. Young's bond was revoked and he was taken into custody on August 5, 2013, where he has remained for the past 8 months. Doc 740. Notably, this is the first time he has ever been in jail.

### *Substantial Assistance*

Beginning with his arrest and throughout the pendency of this case, Mr. Young has cooperated fully with Government prosecutors and agents. He drove from Ft. Pierce to Jacksonville

on at least three occasions to proffer and later testified in the trial of the co-defendants who were subsequently acquitted in the instant case.

Before Mr. Young was taken into custody, he had agreed to testify in *United States v. Votrobek, et al.*, Case No. 4:11-cr-22-RLV, in the Northern District of Georgia, Rome Division. The jury trial was initially scheduled to begin on January 28, 2013, and by then Mr. Young was in custody. Within 3 months into his first time of being in any jail, he was sent on a weeks-long trek through various county jails in Georgia and Alabama. Once he arrived at his destined jail in Georgia, he was informed that the trial had been rescheduled and he was transported back to D. Ray James in Folkston, Georgia. During the "trip," he was often held in isolation because he was a federal inmate and could not be housed with county inmates. Additionally, because he was being moved so often and different jails have different rules, he was rarely able to call his parents and sister. Mr. Young found himself to be the most despondent that he has been throughout this case and when he arrived back in D. Ray James, he had lost 20 pounds.

The *Votrobek* trial was rescheduled for March 2014, and though he dreaded the trip, he was nonetheless prepared to testify and he did so last week. According to the prosecutor in that case, Mr. Young did "an exceptional job" and "his testimony was very helpful" to the Government's case. The prosecutor also noted that Mr. Young had to stay at the local county jail for over a month as he waited to testify – a stay she noted was not under the best of circumstances. The prosecutor also reported that at the end of the three-week trial, the jury reached guilty verdicts as to both of the defendants. *United States v. Votrobek, et al.*, Case No. 4:11-cr-22-RLV, Doc 279.

*Sentencing Guidelines*

The Presentence Report (PSR) calculates Mr. Young's base offense level to be a level 38 based on the total amount of prescribed oxycodone in the conspiracy. PSR ¶108. Notably, three of the prescribing doctors were acquitted at trial (Dr. Perla, Dr. Tafflin, and Dr. Posca) and those three doctors prescribed oxycodone at the two clinics where Mr. Young worked, Jacksonville Pain and First Coast Pain. These facts create doubt as to the accuracy of the amount of prescribed oxycodone and the corresponding base offense level.

The PSR subtracts 2 levels for safety valve under §2D1.1(b)(16) and §5C1.2 with a total offense level of 36. PSR ¶ 110. Mr. Young does not receive credit for acceptance of responsibility based on this Court's practice of not awarding such credit when one uses drugs while on pretrial release and violates conditions of bond. However, Mr. Young respectfully asks the Court to consider his otherwise good conduct while he was on pretrial release when determining his sentence. Mr. Young's Criminal History Category is a I, as Mr. Young has no criminal history points. His resulting guidelines are a 36, I, or 188-235 months, but his sentence is capped at the statutory maximum of 60 months. PSR ¶155.

In determining an appropriate sentence in his case, Mr. Young asks the Court to consider that in co-defendant Brian Goldberg's case, the Court determined that the appropriate guidelines were 24-30 months and sentenced the similarly situated Mr. Goldberg to 24 months' imprisonment. Doc 761. In that case, Mr. Goldberg received substantial assistance based solely on his testimony in the Jacksonville trial, unlike Mr. Young who testified in two jury trials, endured two transports throughout Alabama and Georgia county jails, and whose testimony in the Georgia trial helped return guilty verdicts.

*Conclusion*

As the Court may have noted from the letters and photographs submitted by his parents and sister, they continue to be loving and supportive of Mr. Young. More importantly, Mr. Young has endured a painful lesson in the last couple of years, but more particularly in the past few months. Sitting in isolation in county jails and separated entirely from his family, he knows what he has lost and what he must do to earn back his family's trust and rebuild his own reputation.

Ryan Young respectfully asks the Court for leniency, but accepts this Court's sentence as his punishment for his actions. During supervised release, Mr. Young will abide by all conditions imposed by the Court. He is ready to participate in substance abuse counseling and realizes the importance of earning and keeping his sobriety. He will not get burned a third time, but will persevere and succeed as he has done before.

DONNA LEE ELM
FEDERAL PUBLIC DEFENDER

*s/ Sylvia A. Irvin*
Sylvia A. Irvin, Assistant Federal Defender
Florida Bar No. 0015379
200 West Forsyth Street, Suite 1240
Jacksonville, FL 32202
Telephone: (904) 232-3039
Facsimile: (904) 232-1937
E-mail: sylvia_irvin@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Sentencing Memorandum has been furnished by electronic filing to Jay Taylor, Assistant United States Attorney, this 28th day of March, 2014.

*s/ Sylvia A. Irvin*
Sylvia A. Irvin
Assistant Federal Defender